IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>PARON CAPITAL MANAGEMENT, LLC; and JAMES D. CROMBIE,<br><br>    Defendants.<br>_____/<br>JAMES D. CROMBIE,<br><br>    Third-party Plaintiff,<br><br>  v.<br><br>PETER J. MCCONNON; TIMOTHY LYONS; and DOES 1-25,<br><br>    Third-party Defendants.<br>_____/ | No. C 11-4577 CW<br><br>ORDER DENYING MOTION FOR LEAVE TO FILE AMENDED THIRD-PARTY COMPLAINT (Docket No. 137) |

Defendant and Third-party Plaintiff James Crombie seeks leave to file an amended third-party complaint. Third-party Defendants Peter McConnon and Timothy Lyon oppose the motion. The Court takes Crombie's motion under submission on the papers and DENIES it.

                              BACKGROUND

I.   Procedural History

On September 15, 2011, Plaintiff United States Commodity Futures Trading Commission (CFTC) filed this action against Defendants Paron Capital Management, LLC and Crombie. CFTC alleges that Crombie violated the Commodity Exchange Act by making

false statements and providing fictitious documents on Paron's behalf to the National Futures Association (NFA), a registered futures association auditing Paron, and by soliciting potential customers, individually and on Paron's behalf, by using fraudulent promotional materials based on falsified and counterfeit account trading statements. In connection with each count, CFTC alleges that Crombie was in control of Paron and failed to act in good faith or knowingly induced the acts constituting Paron's violations and is therefore liable for them.

In a separate lawsuit brought on April 14, 2011 in Delaware Chancery Court, Paron, along with Peter McConnon and Timothy Lyon, who co-founded Paron with Crombie and are now the sole remaining members of Paron, sued Crombie for fraud. In the suit, they alleged that Crombie forged account statements from Fimat Futures USA LLC and Access Securities, LLC and made misrepresentations about his performance record, employment history and personal financial situation, to induce McConnon and Lyons to leave their jobs and form Paron with him, providing him with access to their money and valuable client contacts. Paron Capital Mgmt., LLC v. Crombie (Paron I), 2012 WL 2045857, at *4 (Del. Ch.).[1] Because Crombie continued to make and perpetuate these misrepresentations while working as the initial manager of Paron, they also asserted that he breached his fiduciary duty of loyalty to McConnon, Lyon and Paron under the incorporation agreement. Id.

---

[1] McConnon and Lyons ask the Court to take judicial notice of this decision, and Crombie does not oppose the request. Because its accuracy can be ascertained by reference to a source that cannot be readily questioned, the Court grants their request and takes judicial notice of this filing.

2

The Delaware Chancery Court held a trial in early October 2011. Id. Claiming financial hardship, Crombie did not appear at trial and did not present any evidence in his defense. Id.

On December 21, 2011, Crombie filed a third-party complaint against McConnon and Lyons in this Court, alleging that they were responsible for the misrepresentations in the promotional material, which they had authored and distributed, and that they had made false statements to the NFA, CFTC, this Court and the Delaware Chancery Court, including the denial of their involvement in the creation of the fraudulent promotional materials.

On January 24, 2012, the Delaware Chancery Court issued a memorandum opinion, denying various post-trial motions made by Crombie. Paron I, 2012 WL 214777, at *1-8 (Del. Ch.). In the opinion, the court indicated that it considered the "matter fully submitted and ripe for a final determination on the merits." Id. at *8.

On February 10, 2012, Crombie filed a voluntary petition for bankruptcy. In re Crombie, Case No. 12-10389 (Bankr. N.D. Cal.), Docket No. 1. As a result, the Delaware action was stayed. Paron I, 2012 WL 2045857, at *4. Pursuant to a motion by McConnon and Lyons, the stay was lifted on or about February 23, 2012. Id.; In re Crombie, Case No. 12-10389 (Bankr. N.D. Cal.), Docket No. 16.

On April 6, 2012, this Court granted McConnon and Lyons' motion to dismiss Crombie's third-party complaint and quashed service upon them. Docket No. 117. The Court found, among other things, that Crombie had not sufficiently plead the elements of fraud and misrepresentation under California and that he lacked standing to pursue his claims because of his bankruptcy filing.

3

The Court stated that, if the bankruptcy trustee abandoned the claims, Crombie could move for leave to file an amended complaint, if he could truthfully remedy the problems identified in the order.

On May 11, 2012, the bankruptcy trustee notified the Court of his intent to abandon the claims contained in the third-party complaint. Docket No. 135.

On May 22, 2012, the Delaware Chancery Court issued an opinion adjudicating the merits of the Delaware action and finding Crombie liable on both claims. Paron I, 2012 WL 2045857, at *4. On that date, the Delaware Chancery Court also issued a judgment based on the opinion. Paron I, 2012 WL 1850728 (Del. Ch.). The ruling has not yet been reduced to a final judgment such that it would be accorded preclusive effect under Delaware law.

On May 23, 2012, Crombie filed the instant motion for leave to file an amended third-party complaint (ATPC).

On June 6, 2012, the Bankruptcy Court confirmed the abandonment of the claims asserted in the third-party complaint. In re Crombie, Case No. 12-10389 (Bankr. N.D. Cal.), Docket No. 49. Thus, Crombie has standing to pursue the claims.

II. Contents of the Proposed ATPC

In the proposed ATPC, Crombie alleges that, in June 2010, McConnon, Lyons and Crombie formed a partnership and signed an operating LLC agreement for Paron. According to Crombie, he was to be in charge of managing and developing the intellectual property which he had contributed to the company and managing trading operations. APTC ¶ 21. He also alleges that McConnon and Lyons were responsible for all operational, banking, marketing and

4

solicitation activities on behalf of Paron, including authorship of marketing materials and solicitation of potential clients. Id. at ¶ 22.

Crombie asserts two causes of action against McConnon and Lyons. In the first cause of action, titled "negligence," Crombie alleges that McConnon and Lyons violated section 9(a)(4) of the Commodity Exchange Act, codified at 7 U.S.C. § 13(a)(4), in several ways. First, he contends that they "did not have the correct disclosures for JDC Ventures, LLC," that Paron never did business as JDC and that they "were negligent to project that the prior track record of JDC Ventures, LLC was a prior track record for Paron doing-business-as JDC Ventures, LLC." Id. at ¶ 23. Second, he claims that they did not make certain legal disclosures in a due diligence questionnaire (DDQ) or in any other marketing material, which was "non-compliant with the regulatory obligations of a registered Commodity Trading Advisor." Id. at ¶ 24. Finally, he alleges "McConnon was negligent to publish Paron monthly letters with inaccurate and inflated assets under management in the investment strategies, which he admitted telephonically to a NFA agent during its audit of Paron in March 2011." Id. at ¶ 25.

In the second cause of action, titled "misrepresentation," Crombie charges McConnon and Lyons with violating section 4b(a)(1)(A),(B) of the Commodity Exchange Act, codified at 7 U.S.C. § 6b(a)(1)(A),(B). Id. at ¶ 29. In support, he alleges that "McConnon provided all initial responses to the NFA's request for documents" and "later falsely stated to the CFTC that Crombie had provided all the documents to the NFA." Id. at ¶ 27. Crombie

5

also claims that McConnon provided the documents to the NFA in March 2011, which was the document production "in which the CFTC complaint alleges there were false and misleading statements and documents." Id.  He states that "McConnon and Lyons had claimed that Crombie was responsible, and that he had authored, controlled and distributed all marketing materials," but that documents they produced in February 2012 showed that their "assertions were patently false," because they showed that "the native files for Paron's monthly letters, power point presentation, DDQ, and other marketing materials were all created and further modified by McConnon."  Id. at ¶ 28.

Crombie requests a declaration that McConnon and Lyons violated the relevant sections of the Act and restitution "should the Court decide that their violations had caused harm to any person or entity associated with Paron."  Id. at 11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires."  Courts consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint.  Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).  Although these five factors are generally all considered, "futility of amendment alone can justify the denial of a motion."  Id. at 1055.

6

DISCUSSION

McConnon and Lyons oppose Crombie's motion for leave to amend on the basis that amendment would be futile. They argue that he failed to allege properly the elements to state a claim for any violation, that he lacks standing and that he did not comply with the heightened pleading requirements of Rule 9(b). In the alternative, they contend that res judicata will bar his claims once the Delaware Chancery Court enters its final judgment and that the Court should hold this motion in abeyance until that time.

I. First claim for violation of Section 9(a)(4)

Section 9(a)(4) of the Commodity Exchange Act makes it unlawful for

> [a]ny person willfully to falsify, conceal, or cover up by any trick, scheme, or artifice a material fact, make any false, fictitious, or fraudulent statements or representations, or make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry to a registered entity, board of trade, or futures association designated or registered under this Act acting in furtherance of its official duties under this Act.

7 U.S.C. § 13(a).

Section 22(a) of the Commodity Exchange Act also provides for a private right of action for actual damages resulting from a violation of the Act. 7 U.S.C. § 25(a). Except as provided by other specified sections, this section is the "exclusive" remedy "available to any person who sustains loss as a result of any alleged violation of this Act." Id. at § 25(a)(2). This remedy, however, is limited to persons who received trading advice from the violator for a fee, who made a contract for the sale of a

7

commodity for future delivery through the violator, or who purchased from or sold to the violator certain options or contracts. Id. at § 25(a)(1)(A)-(D). The Ninth Circuit has also held that the Act did not preempt "common law remedies . . . available to commodity customers who had suffered financial injury as a result of a breach of common law duties," including common law fraud claims. Kotz v. Bache Halsey Stuart, Inc., 685 F.2d 1204, 1207-1208 (9th Cir. 1982) (noting that the Act created the CFTC as the exclusive authority for regulating commodities trading and as such preempted any substantive state law on that subject that was contrary or inconsistent with federal law).

It is not clear from Crombie's proposed ATPC if he is attempting to assert a cause of action for negligence per se or directly for violation of section 9(a)(4). See Cal. Evid. Code § 669 (elements of negligence per se are that (1) defendant violated a statute or regulation; (2) the violation caused plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and (4) plaintiff was a member of the class of persons the statute or regulation was intended to protect). While he titles his first claim as "negligence," in the text, he alleges that McConnon and Lyons violated the statute itself and seeks a declaration that they did so. Either, Crombie has failed to state a claim.

As McConnon and Lyons point out, Crombie has failed to allege that he suffered any damages or that their actions were the cause of any such damages. While, in his reply, Crombie asserts that the alleged actions of McConnon and Lyons "permanently destroyed my reputation and livelihood and placed me into the epicenter of

8

regulators alleges [sic] of same acts by McConnon and Lyons," Reply at 5, such allegations are not contained in his ATPC. As noted above, damages are a required element for both negligence per se and for a claim made pursuant to section 22(a). See also In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 530 n.104 (S.D.N.Y. 2008) (because "a person who violates the CEA is liable to a private plaintiff only for 'actual damages resulting from' the violation, . . . a plaintiff who failed to allege damages or causation would have failed to state a claim").

Crombie has also failed to allege that any fraudulent statement or misrepresentation made by McConnon and Lyons was done willfully, which is required by the plain terms of section 9(a)(4) and further renders both potential claims defective. For his first and third theories, Crombie plainly alleges that McConnon and Lyons acted "negligently," and thus he could not remedy this deficiency without contradicting the contents of the proposed ATPC. In the second theory, Crombie has not alleged that McConnon and Lyons affirmatively and willfully falsified, concealed, or covered up anything; instead, he merely alleges that they failed to make certain disclosures.

To the extent Crombie may be attempting to bring a claim pursuant to section 22(a), he does not fall into the classes of people who may bring such actions. He does not allege that he received trading advice from McConnon and Lyons for a fee, that he made a contract for the sale of a commodity for future delivery through McConnon and Lyons, or that he purchased from or sold to McConnon and Lyons any options or contracts. See 7 U.S.C. § 25(a)(1)(A)-(D).

9

To the extent Crombie may be seeking to pursue a claim for negligence per se, he is likewise not a member of the class of persons the statute was intended to protect.  The statute appears to be intended to assist in the effective oversight of commodities traders in order to protect investors and the public from the harm of improper trading practices, not to protect traders from fraud by their business partners.

McConnon and Lyons also argue that Crombie failed to plead that certain alleged misstatements were material.  In the context of the Commodity Exchange Act, a "statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest."  R & W Tech. Servs., Ltd. v. CFTC, 205 F.3d 165, 169 (5th Cir. 2000).  See also Tsc Indus. v. Northway, 426 U.S. 438, 449 (1976).  Crombie does not specify what "legal disclosures" McConnon and Lyons purportedly failed to make or how such failures were material.

II. Second claim for violation of section 4b(a)(1)(A),(B)

Section 4b(a)(1) of the Commodity Exchange Act makes it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . .
>
>     (A) to cheat or defraud or attempt to cheat or defraud the other person; [or]
>
>     (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record . . .

10

7 U.S.C. § 6b(a)(1). The elements of a securities fraud action under this section "are derived from the common-law action for fraud." Horn v. Ray E. Friedman & Co., 776 F.2d 777, 780 (8th Cir. 1985). See also First Nat'l Monetary Corp. v. Weinberger, 819 F.2d 1334, 1340 (6th Cir. 1987); Hartwig Transit, Inc. v. RBS Citizens, N.A., 2011 U.S. Dist. LEXIS 92483, at *6 (N.D. Ill.) ("A claim for relief under 7 U.S.C. § 6b is based on the principles of common law fraud where the relevant inquiry is whether a plaintiff actually relied upon the defendant's representations."). "The elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e. to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" Cross v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 141944, at *9-10 (C.D. Cal.) (quoting Anderson v. Deloitte & Touche LLP, 56 Cal. App. 4th 1468, 1474 (1997)).

As in his original third-party complaint, Crombie has failed to state a claim for fraud. As discussed above, Crombie has not alleged that he was harmed by McConnon and Lyons' purported misstatements. Crombie again also fails to allege that McConnon and Lyon intended for him to rely on these statements or that he did in fact rely on them to his detriment.

III. The heightened pleading requirements of Rule 9(b)

Because both of Crombie's claims are based on allegations of fraud, he is required to comply with the heightened pleading requirements of Rule 9(b). See, e.g., Walrus Master Fund Ltd. v. Citigroup Global Mkts., Inc., 2009 U.S. Dist. LEXIS 35040, at *7 (S.D.N.Y.) (applying to fraud claim under section 4b of the

11

Commodity Exchange Act); United States CFTC v. Amaranth Advisors, L.L.C., 554 F. Supp. 2d 523, 535 (S.D.N.Y. 2008) ("because claims under section 9(a)(4) sound in fraud, they are subject to the heightened pleading requirements in Rule 9(b)"). Pursuant to this rule, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Federal Rule of Civil Procedure 9(b). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

Crombie has again failed to meet this requirement. In his first claim, Crombie did not state what McConnon and Lyons wrote to "project" that the prior track record of JDC was attributable to Paron in the way suggested, or when or in which materials they did this. He fails to state what disclosures they failed to make, when and in which documents. He fails to state what statements they made about "inaccurate and inflated assets" in what documents, when and how the statements were inaccurate. In his second claim, he does not identify the time, place and manner of the alleged statement to the CFTC that Crombie provided all the documents to the NFA. Crombie also fails to specify to whom McConnon and Lyons claimed that Crombie was responsible for the marketing materials or when.

## CONCLUSION

For the reasons set forth above, the Court finds that Crombie's proposed amended third-party complaint fails to state a

12

claim and DENIES Crombie's motion for leave to file it (Docket No. 137). Further, because Crombie has had an opportunity to correct the deficiencies in his third-party complaint, denial is without leave to amend further.

Having denied Crombie's motion on other grounds, the Court does not reach Lyons and McConnon's request to hold his motion in abeyance pending the final judgment from the Delaware Chancery Court.

The further case management conference and hearing on case dispositive motions are maintained as currently set on December 20, 2012 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 6/25/2012

CLAUDIA WILKEN
United States District Judge

13