Tara R. Kelly (D.C. Bar No. 438241, t_kelly@cftc.gov)
John Einstman (D.C. Bar No. 484539, jeinstman@cftc.gov)
Brian G. Mulherin (Cal. Bar No. 193297, bmulherin@cftc.gov)
Jonathan P. Robell (D.C. Bar No. 493977, jrobell@cftc.gov)
**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581
Telephone:   (202) 418-6710 (Robell)
Facsimile:    (202) 418-5538

Attorneys for Plaintiff
U.S. COMMODITY FUTURES TRADING COMMISSION

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>PARON CAPITAL MANAGEMENT, LLC, and JAMES D. CROMBIE,<br><br>                    Defendants. | Case No. 4:11-cv-04577 CW (NC)<br><br>[Proposed]<br><br>**Consent Order of Permanent Injunction Under the Commodity Exchange Act Against Defendant Paron Capital Management, LLC** |

On or about September 15, 2011, Plaintiff United States Commodity Futures Trading Commission ("Commission," "CFTC," or "Plaintiff") filed its Complaint in the above-captioned action against Paron Capital Management, LLC, ("Paron") and James D. Crombie ("Crombie") (collectively, "Defendants"), seeking injunctive and other equitable relief for violations of Section 9(a)(4) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1, *et seq.*, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No., 110-246, Title XIII (the Commodity Futures Trading Commission Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 13(a)(4); violations of Section 4b(a)(1)(A), (B) of Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A), (B); and violations of

Section 4o(1)(A), (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o(1)(A), (B). The Commission filed its Amended Complaint on March 28, 2012. The Amended Complaint alleges that Paron, by and through Crombie, and Crombie individually, made and provided to the National Futures Association ("NFA") false, fictitious, or fraudulent statements during an NFA investigation and audit of Paron conducted pursuant to NFA's official duties under the Act. Defendants made and provided to NFA these false, fictitious, or fraudulent statements for the purpose of preventing NFA from discovering that Defendants were soliciting clients to trade commodity futures on or subject to the rules of a designated contract market using fraudulent promotional material. The fraudulent promotional material was based on falsified and counterfeit trading account statements. After providing NFA with initial false, fictitious, and fraudulent statements, Paron, by and through Crombie, and Crombie individually made subsequent false, fictitious, and fraudulent statements to NFA in an attempt to further conceal Defendants' conduct and impede NFA's investigation and audit.

Paron consents to the entry of this proposed Consent Order, including to the findings and conclusions in the Order, the jurisdiction of the Commission, and venue. Paron further states that its consent is entered into voluntarily and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof to induce it to consent to this Order.

## I. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Amended Complaint against Paron without a trial on the merits or further judicial proceedings, Paron:

1. Consents to the entry of this Consent Order of Permanent Injunction and Ancillary Equitable Relief Under the Commodity Exchange Act Against Defendant Paron Capital Management, LLC ("Consent Order");

2. Affirms that Paron, through its officers, agents and attorneys, has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint and the Amended Complaint;

4. Admits the jurisdiction of this Court over Paron and the subject matter of this action pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1;

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(e);

7. Waives:

   (a) any and all claims that Paron may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission's Regulation ("Regulations"), 17 C.F.R. §§ 148.1 *et seq*. (2011), relating to, or arising from, this action;

   (b) any and all claims that Paron may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

   (c) any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

   (d) any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over Paron for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Paron now or in the future resides outside the jurisdiction of this Court;

9. Agrees that Paron will not oppose enforcement of this Consent Order on the ground that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10. Agrees that Paron will continue to use its best efforts to cooperate with the Commission in all aspects of this litigation, including, but not limited to, by continuing to provide

documents and information as requested and by making witnesses available upon request, and that such cooperation will continue through the termination of litigation against all Defendants;

11. Agrees that neither Paron nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Amended Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Amended Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Paron's: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Paron shall undertake all steps necessary to ensure that Paron's agents or employees under its authority or control understand and comply with this agreement; and

12. By consenting to the entry of this Consent Order, Paron neither admits nor denies the allegations of the Amended Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which it admits. Further, Paron agrees and intends that the allegations contained in the Amended Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Paron; (b) any proceeding pursuant to Section 8a of the Act, as amended, to be codified at 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2011); and/or (c) any proceeding to enforce the terms of this Consent Order.

13. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against Paron, whether inside or outside the United States, and

14. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Paron in any other proceeding.

15. The findings and conclusions in this Consent Order are not binding on any other party to this action.

## II. FINDINGS AND CONCLUSIONS

16. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

### A. Findings of Fact

#### Relevant Parties in the Case

17. Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

18. The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

19. Defendant **Paron Capital Management, LLC** is a Delaware corporation, incorporated in March 2010, whose principal place of business is in Tiburon, California. Paron has been registered in Nevada as a foreign business entity since December 2010. Paron has been registered with the Commission as a commodity trading advisor ("CTA") (NFA ID # 0422876) since August 2, 2010. Crombie was registered as an associated person ("AP") and listed as a principal of Paron from August 2, 2010 until March 31, 2011. Paron has two other APs, Peter J. McConnon ("McConnon") and Timothy D. Lyons ("Lyons"). McConnon and Lyons are not parties to the present suit. Upon information and belief, Paron is the successor of JDC Ventures LLC ("JDC"), a firm founded in 2005 as an entity solely owned and managed by Crombie. In 2010, JDC began operating as Paron Capital Management LLC, and at that time the entity identified three members: Crombie, Lyons, and McConnon.

20. Defendant **James D. Crombie** is an individual residing in California. He was registered with the Commission as an AP and listed as a principal of Paron from August 2, 2010 until

March 31, 2011. According to Article 3 of Paron's June 2, 2010 Limited Liability Company Agreement (the "Operating Agreement"), Crombie was designated as the company's "Initial Manager" for a period of three years, and Crombie possessed a 75% initial limited liability company interest in Paron during the same period. According to Article 6 of the Operating Agreement, Crombie was entitled to an "initial percentage" of 75% of Paron's profits and losses ("P&L"). Crombie was previously listed as a principal of JDC, which was a registered CTA, between January and May 2010, and registered as an AP of JDC from February 2009 to May 2010. The Commission's claims against Paron arise from the acts and omissions of its former member, Crombie, who was dismissed from Paron on or about March 31, 2011.

**Facts**

1. **False Statements Provided To NFA During NFA's Audit of Paron**

21. During the period of August 2010 through March 2011 (the "relevant period"), Defendants used promotional material in the form of a PowerPoint presentation, known as the "Flip Book," a monthly newsletter ("Newsletter"), and a Due Diligence Questionnaire ("DDQ") in order to solicit potential clients for Paron.

22. In early 2011, NFA received anonymous complaints alleging that Defendants were advertising fictitious performance information and that Crombie and JDC had been sued in civil lawsuits for financial fraud in connection with loans totaling more than $1 million.

23. As a result of the anonymous complaints, NFA commenced an audit of Paron pursuant to the authority delegated to NFA by the Commission. An NFA audit team commenced an onsite examination of Paron on March 21, 2011.

24. During its audit of Paron, NFA obtained Paron promotional material consisting of the Flip Book, the Newsletter, and the DDQ. The Flip Book and Newsletter each claimed that JDC and Crombie had previously achieved annual rates of return as high as 38.6% in 2008. The DDQ claimed that total assets "managed/advised" by Paron in 2011 were approximately $35 million, and that the largest current account was $20 million. During the relevant period, Defendants used the Flip Book, the Newsletter, and the DDQ as promotional material for the solicitation of potential clients for Paron.

25. NFA requested information from Defendants to determine whether Defendants were in compliance with NFA rules and the Act. Specifically, NFA requested supporting documentation for the historical returns cited in certain Paron promotional materials.

26. In response to NFA's request for support for the historical returns cited in certain Paron promotional material, Crombie provided NFA with monthly account statements from Fimat Futures USA LLC ("Fimat"), formerly a futures commission merchant ("FCM").

27. NFA discovered that the Fimat monthly account statements provided by Crombie to NFA during its audit of Paron were fraudulent after NFA requested that Newedge USA LLC ("Newedge"), the successor FCM of Fimat, provide it with the Fimat account statements in Newedge's possession. In comparing the Fimat monthly account statements provided by Crombie with the Fimat monthly account statements provided by Newedge, NFA discovered that there were significant material differences between them. For example, the Fimat monthly account statements provided by Crombie showed a total net liquidating value for the two JDC owned and operated pool accounts as $24 million as of December 31, 2008. In contrast, the account statements provided by Newedge indicated that the last trading activity in the accounts occurred in September 2007, and that subsequent to that month, the accounts together maintained a balance of approximately $80 until they were closed in February 2008.

28. In further response to NFA's request for support for the historical returns cited in certain Paron promotional material, Crombie also provided NFA with monthly account statements from Access Securities, LLC ("Access"), an introducing broker registered with the Commission.

29. NFA discovered on March 28, 2011, that the Access statements Crombie had provided to NFA were fictitious because Access did not maintain any accounts managed by Crombie.

30. In further response to NFA's request for support for the historical returns cited in Paron's promotional material, Crombie provided NFA with a Trading Advisory Agreement ("TAA") dated December 13, 2007, purportedly signed by Richard Breck ("Breck"), an AP of Access.

31. On March 29, 2011, via letter from Breck's and Access's attorney, NFA discovered that the TAA Crombie provided to NFA was fictitious. The letter stated that Breck had never

executed a TAA with Crombie, Breck's signature on the TAA appeared to be a forgery, and neither Defendants nor JDC had ever managed any account maintained at Access.

32. In response to NFA's questions concerning the existence of any lawsuits against Paron, Crombie represented to NFA that there had been no litigated actions, arbitrations, or settlements against Paron or its principals and APs within the two years prior to March 2011. Crombie's statement was false.

33. In fact, two separate lawsuits had been filed against Crombie (and JDC) in the Superior Court of California by Paul Porteous ("Porteous") (on January 5, 2010) and Steven Lamar ("Lamar") (on May 18, 2010). These lawsuits stemmed from Crombie and JDC's failure to repay loans received from Porteous and Lamar, and resulted in judgments against Crombie and JDC totaling more than $4 million.

34. In response to NFA's questions concerning a $200,000 payment from JDC to Porteous on May 6, 2009, Crombie informed NFA that Porteous had previously contributed capital to JDC in 2008, and that the $200,000 payment to Porteous was in repayment of Porteous' capital contribution. Crombie's statements to NFA concerning the $200,000 payment from JDC to Porteous were false.

35. The $200,000 payment from JDC to Porteous was a partial payment of a promissory note, dated September 24, 2008, which Crombie had issued to Porteous, and which later became the subject of Porteous' lawsuit against Crombie and JDC discussed above.

36. In response to NFA's questions concerning deposits into a JDC bank account of $50,000 and $250,000 on May 4 and May 5, 2010, respectively, Crombie stated that these deposits were payments from Lamar to JDC for "financial engineering services." Crombie's statements to NFA concerning these deposits were false. According to Lamar's complaint, these deposits were instead in the nature of loans from Lamar to JDC and Crombie, and the agreement between Lamar and JDC specified that the $300,000 would be repaid with revenue generated by Crombie and JDC. Thus, the deposits of $50,000 and $250,000 on May 4 and May 5, 2010, respectively, were not payments for "financial engineering services."

37. In response to NFA's questions concerning whether Defendants had any outstanding loans, Crombie identified only one loan from his brother-in-law. Crombie's statement to NFA

concerning the number of outstanding loans owed by Defendants was false. During the course of its audit of Paron, NFA identified several loans to Crombie from multiple individuals and entities since 2009.

38. In response to NFA's questions concerning a $50,000 payment to JDC from Mark Steele ("Steele"), Crombie stated that the payment was for services, specifically building computer models, preparing research sheets, and working on valuation models, that JDC had provided to Steele and Steele's company. Crombie's statements concerning the payment from Steele were false. When NFA contacted Steele to verify the accuracy of Crombie's statements, Steele explained that the $50,000 payment to JDC was a personal loan owed to him by Crombie.

39. On March 29, 2011, NFA had a teleconference with Crombie. During this teleconference, Crombie claimed that he had received the fraudulent Fimat account statements from individuals who worked at SCR Capital LLC ("SCR Capital").

40. During the March 29, 2011 teleconference, Crombie also claimed that he had received the fraudulent Access account statements from individuals who worked at Source Trading ("Source"), which is a division of Access. NFA contacted the individuals from whom Crombie claimed he received the fraudulent FIMAT and Access account statements. All of them denied that they had provided these fraudulent documents to Crombie.

### 2. Fraudulent Solicitation

41. During the course of business, as recently as March 2011, Crombie, individually and on behalf of Paron, used the Flip Book, the Newsletter, and the DDQ to solicit potential clients to trade commodity futures on or subject to the rules of a designated contract market. McConnon, one of the three principals in Paron, informed NFA that the DDQ was most recently distributed to potential clients on March 8, 2011, and the Flip Book was most recently distributed on March 21, 2011. The Newsletter was most recently distributed to potential clients on March 10, 2011.

42. The purported gains claimed on the promotional material were based on the falsified monthly statements allegedly from FIMAT and Access. Both the Flip Book and the Newsletter touted a fictitious 38.6% annual rate of return purportedly achieved by Crombie and JDC in 2008,

1   when, in fact, the two existing JDC accounts were only open for two months of that year, each had a
2   0.001% rate of return.

3   43.   Paron, by and through Crombie, and Crombie individually solicited potential
4   customers using the DDQ. The DDQ falsely represented that the total assets managed or advised by
5   the firm in 2011 were approximately $35 million, and that the largest current count was $20 million.
6   During the course of the audit, Crombie admitted to NFA that these amounts were incorrect.

7   44.   On March 31, 2011, NFA filed a Member Responsibility Action ("MRA") against
8   Paron and an Associate Responsibility Action ("ARA") against Crombie. As a result of these actions,
9   NFA suspended Defendants' NFA memberships.

10  45.   During the investigation of this matter by NFA and the Commission's Division of
11  Enforcement (the "Division"), Paron, through McConnon and Lyons, cooperated by:

12  (a)   Assisting NFA in contacting the purported owner of accounts for which
13  Crombie had provided false documents to NFA investigators;

14  (b)   Promptly ceasing all investment activity and terminating Crombie's access to
15  client funds and managed accounts;

16  (c)   Promptly notifying Paron's current and prospective customers of Crombie's
17  apparent fraud and NFA's investigation;

18  (d)   Undertaking efforts to return funds invested by Paron's customers;

19  (e)   Assisting the Division with its pre-complaint investigation by providing
20  documents and information to the Division and making Paron's remaining principals available for
21  interviews by the Division; and

22  (f)   Cooperating with the Division in all aspects of litigation, including discovery,
23  following the filing of the Commission's original Complaint.

24  **B.   Conclusions of Law**

25  **1.   Jurisdiction and Venue**

26  46.   This Court has jurisdiction over this action pursuant to Section 6c of the Act, as
27  amended by the CRA, to be codified at 7 U.S.C. § 13a-1, which authorizes the Commission to seek
28  injunctive and other relief against any person whenever it shall appear to the Commission that such a

person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order promulgated thereunder.

47. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(e), because Paron is found in, inhabits, or transacts business in the Northern District of California, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur, among other places, within this District.

### 2. Paron, By And Through Crombie, Violated Section 9(a)(4) Of The Act, As Amended By The CRA; Section 4b(a)(1)(A), (B) Of The Act; And Section 4o(1)(A), (B) Of The Act

48. Section 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13(a)(4), makes it unlawful for any person:

> [W]illfully to falsify, conceal or cover up by any trick, scheme, or artifice a material fact, make any false, fictitious, or fraudulent statements or representations, or make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry to a registered entity, board of trade, or futures association designated or registered under this Act acting in furtherance of its official duties under the Act.

Section 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13(a)(4).

49. Section 4b(a)(1)(A), (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A), (B), makes it unlawful for any person to cheat or defraud or attempt to cheat or defraud any other person; or willfully make or cause to be made to another person any false report or statement, or willfully to enter or cause to be entered for another person any false record, in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery on or subject to the rules of a designated contract market.

50. Section 4o(1) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o(1), makes it unlawful for any CTA:

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

Section 4o(1)(A), (B), as amended by the CRA, to be codified at 7 U.S.C. § 6o(1)(A), (B).

51.     Paron, by and through Crombie, violated Section 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13(a)(4), with respect to acts occurring during the relevant time, in that Paron concealed material facts from, and made false statements to, NFA by: (1) providing fraudulent account statements to NFA; (2) providing a fraudulent TAA to NFA; (3) making false statements to NFA concerning the existence of lawsuits in which the Defendants were named parties; (4) making false statements to NFA concerning capital contributions to Paron; (5) making false statements to NFA concerning large-sum payments to and from JDC; (6) making false statements to NFA concerning the number of outstanding loans owed by Defendants; and (7) making false statements to NFA regarding the sources of the fraudulent documents Defendants had provided to NFA during its audit.  All of these actions are violations of Section 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13(a)(4).

52.     The foregoing acts, omissions, and misrepresentations to NFA, and willful concealment from NFA, by Crombie occurred within the scope of his employment or agency with Paron; therefore, Paron is liable for these acts, omissions, misrepresentations, and willful concealment in violation of Section 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13(a)(4), pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

53.     Paron, by and through Crombie, violated Section 4b(a)(1)(A), (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A), (B), because in connection with the making of contracts for sale of commodities for future delivery on or subject to the rules of a designated contract market, Paron attempted to cheat or defraud clients by soliciting customers to trade commodity futures with Paron using promotional documentation that omitted material information and contained material misrepresentations and misstatements about the historical rate of return Defendants had achieved in two JDC owned and operated CPO accounts.  As support for the misrepresentations in the JDC promotional materials Paron, by and through Crombie, crafted counterfeit and fictitious account statements for Fimat and Access accounts.

54.     As a principal and Initial Manager of Paron, Crombie was acting as an agent of Paron when he engaged in the acts, omissions, and failures in violation of Section 4b(a)(1)(A), (B) of the

Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A), (B), and, therefore, Paron is liable for these acts, omissions and failures in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B).

55. Paron was registered as a CTA with the Commission at all relevant times.

56. Paron, by and through Crombie, violated Section 4o(1)(A), (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o(1)(A), (B), because, as a CTA, it directly or indirectly employed, a device, scheme, or artifice to defraud clients, or engaged or are engaging in transactions, practice, or a course of business which operated as a fraud or deceit upon clients by misrepresenting the CTA's expected returns when soliciting prospective clients.

57. As a principal and Initial Manager of Paron, Crombie was acting as an agent of Paron when he engaged in the acts, omissions, and failures in violation of Section 4o(1)(A), (B), of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o(1)(A), (B), and, therefore, Paron is liable for these acts, omissions and failures in violation the Act, pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B).

### III. ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF

**IT IS HEREBY ORDERED** that:

1. Paron shall be permanently restrained, enjoined, and prohibited from engaging, directly or indirectly, in any conduct in violation of Section 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §13(a)(4).

2. Paron shall be permanently restrained, enjoined, and prohibited from engaging, directly or indirectly, in any conduct in violation of Sections 4b(a)(1)(A), (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A), (B).

3. Paron shall be permanently restrained, enjoined, and prohibited from engaging, directly or indirectly, in any conduct in violation of Sections 4o(1)(A), (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o(1)(A), (B).

4. Paron shall be permanently restrained, enjoined and prohibited from engaging, directly or indirectly in:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

b. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2011) ("commodity options"), security futures products,(as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for its own account or for any account in which it has a direct or indirect interest;

c. Having any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts traded on its behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R.

§ 4.14(a)(9) (2011).

**IT IS FURTHER ORDERED, ADJUGED AND DECREED** that this Court shall retain jurisdiction of this matter for the purpose of:  implementing and enforcing the terms and conditions of this Consent Order; and for any other purpose.

**IT IS FURTHER ORDERED, ADJUGED AND DECREED** that there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Consent Order forthwith and without further notice.

IV.     **MISCELLANEOUS PROVISIONS**

1.      Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Director of Enforcement
> U.S. Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, D.C. 20581

Notice to Defendant Paron Capital Management, LLC:

> J. Noah Hagey
> Mark P. Fickes
> BraunHagey & Borden LLP
> 220 Sansome Street, 2nd Floor
> San Francisco, CA 94104

All such notices to the Commission shall reference the name and docket number of this action.

2.      Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

3.      Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

4.      Waiver:  The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of

the party or customer at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

5. Acknowledgements: Upon being served with copies of this Consent Order after entry by the Court, Paron shall sign acknowledgements of such service and serve such acknowledgements on the Court and the Commission within 14 calendar days.

6. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Paron to modify or for relief from the terms of this Consent Order.

7. Injunctive and Equitable Relief Provisions: The injunctive relief provisions of this Consent Order shall be binding upon Paron, upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Paron.

8. Authority: Timothy Lyons / Peter McConnon hereby warrant that they are principals of Paron, and that this Consent Order has been duly authorized by Paron and they have been duly empowered to sign and submit this Consent Order on behalf of Paron.

9. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

10. Paron understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings it may not challenge the validity of this Consent Order.

- 16 -
CONSENT ORDER – PARON CAPITAL MANAGEMENT, LLC
Case No. 4:11-cv-04577 CW (NC)

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order for Paron Capital Management, LLC*.

SO ORDERED:

*[signature: Claudia Wilken]*

HON. CLAUDIA WILKEN
UNITED STATES DISTRICT COURT JUDGE

**CONSENTED TO:**

Dated: 5/18, 2012

**PARON CAPITAL MANAGEMENT, LLC**

By: _____
         Signature

Printed Name: TIMOTHY D. LYONS

Its: _____Manager_____
         Title

**NOTARY:**

On MAY 18, 2012, TIMOTHY LYONS, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

State of Nevada,
County of Washoe
This instrument was acknowledged before me on 5/18/12
By TIMOTHY LYONS.

By: _____
         Signature

Printed Name: STEVIE HERRERA

My Commission Expires: 10·01·2013

STEVIE HERRERA
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 09-11164-2 · Expires October 1, 2013

- 18 -

APPROVED AS TO FORM:

Dated: 8-31, 2012

By: _____
J. Noah Hagey

**BRAUNHAGEY & BORDEN LLP**
220 Sansome Street, 2nd Floor
San Francisco, California 94104

Dated: 9/4, 2012

Respectfully submitted,

By: _____
Jonathan P. Robell

Tara R. Kelly (t_kelly@cftc.gov)
John Einstman (jeinstman@cftc.gov)
Brian G. Mulherin (bmulherin@cftc.gov)
Jonathan P. Robell (jrobell@cftc.gov)
**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-6710 (Robell)
Facsimile: (202) 418-5538

Attorneys for Plaintiff UNITED STATES
COMMODITY FUTURES TRADING COMMISSION